

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. Wm. J. Tucker
Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Dear Mr. Tucker:

Opinion No. O-1306
Re: What constitutes pollution
of a bayou by sewage from
a municipality and whether
the Superintendent of the
plant is subject to arrest.

We have your letter of August 21, requesting
an opinion from this department and setting out certain
facts, which we quote:

"A city disposal plant is located on
a bayou where the tide ebbs and flows. The
bayou at that point, and for a distance of a
mile or so on either side, is not used for
livestock, drinking, or domestic purposes.
At a distance of about ten miles from the
sewage plant, the bayou converges with another
stream, the waters of which are sometimes used
for livestock, drinking, and domestic purposes.
There are no oyster beds or bathing places;
nor is there any fish life in the immediate
vicinity of the disposal plant, which is large-
ly due to the condition created by the plant.
Fish life is present at a distance of four to
six miles down stream, and there are some
bathing places located near the confluence of

the bayou with the fresh water stream.

"During the rainy season, the sewage plant by-passes sewage directly into the bayou without any treatment. Parties in charge of the plant explain that this is necessary because equipment is not sufficient to handle the flow when it is augmented by surface waters". (Underscoring ours).

In this connection, you ask the following questions:

1. "Under the above conditions, would the municipality be guilty of polluting a public waterway under article 698 P. C., 1925?"

2. "Would a representative of the Game, Fish and Oyster Commission have authority to file a complaint against the Superintendent of the disposal plant if he has good reason to believe the law is being violated?"

The pertinent parts of Article 698, Vernon's Annotated Penal Code are as follows:

"It shall be unlawful for any person, firm or corporation, private or municipal to pollute any water course or other public body of water . . .; provided, however, that the provision of this bill shall not affect any municipal corporation situated on tide waters; that is to say, when the tide ebbs and flows in such water course; provided, however, that no city located on the tide water shall discharge or permit to be discharged sewage, oil or any other effluents into public tide waters of this State when such discharge will become a menace to or endangers the oyster beds or fish life in such water, or when such discharge becomes a menace to the bathing places in such water. In so far as concerns the protection of fish and oysters,

> the Game, Fish and Oyster Commissioner, or
> his deputies, may have jurisdiction in the
> enforcement of this chapter. A <u>violation</u>
> of any of the provisions of this chapter
> shall be <u>punished by a fine</u> of not less than
> one hundred dollars and not more than one
> thousand dollars. When the offense shall
> have been committed . . . by a municipal corp-
> oration, the <u>mayor and each member of the board
> of aldermen or commission, having knowledge
> of the commission of such offense, shall be
> deemed guilty. . ."</u> (underscoring ours).

Your questions taken together clearly indicate
that the pollution you are interested in is only that
for which a representative of the Game, Fish and Oyster
Commission could file a complaint. By its terms, the
above article authorizes the Game, Fish and Oyster Com-
missioner or his deputies to enforce same "in so far as
it concerns the protection of fish and oysters." It
does not authorize him or his deputies to enforce its
provisions in so far as they make it a crime to "menace
the bathing places in such waters". Neither does Arti-
cle 4018, Vernon's R. C. S. of Texas, 1925, which de-
fines the powers and duties of the Commissioner, give
him or his deputies power to enforce said article in
so far as it concerns bathing places; nor, is he given
such power by law, in our opinion. Therefore, in
answering your questions, we will not consider the
facts stated by you, with regard to the location or
absence of bathing beaches on the bayou.

The controlling facts stated by you are, that
a city, which we assume to be a municipal corporation, dis-
charges sewage from its disposal plant into the bayou upon
which it is located and in which bayou, the tide ebbs
and flows; and, that "largely due to the conditions created
by the plant", there is no fish life in the <u>immediate vi-
cinity.</u> From these facts we must determine whether or not,
using the language of the Statute, the oyster beds and
fish life in the bayou are <u>menaced or endangered,</u> since
to menace and endanger same constitutes the gravamen of
the offense.

It is a familiar rule of statutory construction

that words used by the Legislature in a statute are to be given their usual meaning, unless that meaning is shaded or changed by the manner in which they are used in the particular statute; expressed another way, the rule is that "words of a statute are accorded the meaning that comports with the legislative intent". 39 Tex. Jur. 194. That rule, we think, is applicable to the words menace and endanger. Absent the definition of these terms by the courts, we rely upon their definitions as found in Webster's Unabridged Dictionary. There appears to be no reason here for extending or restricting their meaning beyond this natural import. Oliver v. State, 144 S. W. 604.

You say there is no fish life in the "immediate vicinity" of the disposal plant, but that it is present at a distance four to six miles downstream. We cannot tell from your statements just exactly how far away from the disposal plant the fish life is non-existent in the stream as a result of discharge of the sewage, but since the statute does not distinguish between degrees of "menacing and endangering" the fish life, we do not consider that material.

It is our conclusion, based upon your statement that there is no fish life in the immediate vicinity of the disposal plant and possibly for a distance of four miles from the plant, largely due to the condition created by the plant, that the fish life is menaced and endangered and that the bayou is being polluted and that the city referred to by you is guilty of the offense defined in said Article 698, supra. To reach this conclusion, we have assumed that there would be fish life in the bayou in the immediate vicinity of the disposal plant and between the disposal plant and the point where such fish life does exist, but for the discharge of sewage as described by you. This assumption seems reasonable and proper, in view of your statements. Therefore, it is the opinion of this department, and you are so advised, that the answer to your first question is in the affirmative.

Coming to your second question, Article 698 quoted herein, supra, provides who shall be held guilty and subject to punishment in case of a violation of its

terms by a municipal corporation, namely, the mayor
and each member of the Board of Aldermen or Commission.
It does not include the Superintendent of the disposal
plant. Since in Texas every penal offense must be
made such and a punishment provided therefor by statute,
and the superintendent of the disposal plant has not been
made subject to punishment for the offense defined in
Article 698, supra, it is the opinion of this depart-
ment, and you are so advised, that the answer to your
second question is in the negative. Penal Code, 1925,
Art. 1-3.

The answer to your second question is based
on the assumption that the superintendent of the city
disposal plant is not also Mayor, or a member of the
Board of Aldermen or City Commission. If he were, the
question would require further consideration, and we
do not answer it at this time.

Trusting that this satisfactorily answers your
inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By James Noel
James Noel
Assistant

JN:BT

APPROVED SEP 30, 1939

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS